Filed 12/27/24

CERTIFIED FOR PARTIAL PUBLICATION[*]

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| PAULINE MARY HUFF,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>INTERIOR SPECIALISTS, INC., et al.,<br><br>    Defendants and Respondents. | D082036<br><br><br><br>(Super. Ct. No. 37-2021-00016138-CU-OE-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Gregory W. Pollack, Judge. Motion to augment granted in part, denied in part. Request for judicial notice denied. Reversed and remanded.

Bibiyan Law Group, David D. Bibiyan, Jeffrey D. Klein and Henry G. Glitz for Plaintiff and Appellant.

Ogletree, Deakins, Nash, Smoak & Stewart, Ryan H. Crosner and Daniel Rojas for Defendants and Respondents.

---

[*]    Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part B of the discussion.

Pauline Mary Huff filed a class action and an action under the Private Attorneys General Act of 2004 (Labor Code, § 2698 et seq.) (PAGA)[1] against her former employer, Interior Specialists, Inc., and its related corporate entities (collectively Interior Specialists) alleging an array of wage-and-hour violations. Interior Specialists first moved to compel arbitration of Huff's claims in the class action. In opposing this motion, Huff mainly argued that the agreement to arbitrate was invalid because, when she attempted to sign the agreement in DocuSign, an electronic signature for someone else named "William" was already entered into the agreement. On May 27, 2022, the trial court found sufficient evidence showing that Huff consented to the agreement and granted the motion to compel.

After the class and PAGA actions were consolidated, Interior Specialists filed a separate motion to compel Huff's PAGA claims to arbitration. On October 21, 2022, the trial court reiterated its earlier finding that Huff validly signed the agreement. Then, relying on the United States Supreme Court's then-recent decision in *Viking River Cruises, Inc. v. Moriana* (2023) 596 U.S. 639 (*Viking River*), it ordered Huff's claims brought on her own behalf (her individual PAGA claims) to arbitration, and dismissed the claims brought on behalf of other current or former employees (her nonindividual PAGA claims) without prejudice for lack of standing.

---

[1] "PAGA authorizes 'an aggrieved employee,' acting as a proxy or agent of the state Labor and Workforce Development Agency (LWDA), to bring a civil action against an employer 'on behalf of himself or herself and other current or former employees' to recover civil penalties for Labor Code violations they have sustained." (*Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1113 (*Adolph*).)

On April 18, 2023, Huff filed two notices of appeal—one from the May 27, 2022 order and another from the October 21, 2022 order. She contends the trial court erred in finding that she signed the arbitration agreement and in dismissing her nonindividual PAGA claims.

For reasons we explain, we conclude that Huff timely appealed from the October 21 order dismissing her nonindividual PAGA claims. On the merits of that order, we reverse based on the California Supreme Court's decision in *Adolph*, *supra*, 14 Cal.5th 1104, which rejected *Viking River*'s interpretation of California law on the issue of standing. Because we are reversing based on *Adolph*, we need not address Huff's additional arguments concerning the electronic signature.

## FACTUAL AND PROCEDURAL BACKGROUND

Huff worked for Interior Specialists in a customer services role between November 2020 and January 2021. In April 2021, she sued Interior Specialists asserting individual and class claims for relief under various wage-and-hour provisions of the Labor Code (§§ 201–204, 226, 226.7, 227.3, 510, 512, 1194, 1197, 2802) as well as the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) (the class action). After satisfying prelitigation notice requirements, in June 2021 she filed a separate complaint for civil penalties alleging individual and nonindividual PAGA claims based on similar Labor Code violations (the PAGA action).[2]

As to the class action, in November 2021 Interior Specialists moved to compel Huff to submit her claims to arbitration. The motion was supported

---

[2] The trial court ordered the class action (case No. 37-2021-00016138-CU-OE-CTL) and the PAGA action (case No. 37-2021-00027662-CU-OE-CTL) consolidated on March 25, 2022, with the class action becoming the lead case. The register of actions, however, does not reflect the consolidation until June 7, 2022.

by a declaration from Brittany Lazar, the Human Resources Specialist who helped Huff complete her initial hiring paperwork. Lazar explained that she sent Huff an employment offer letter, a mutual arbitration agreement, a nondisclosure agreement, and a background check authorization form via DocuSign. Huff returned completed paperwork within the DocuSign program on November 19, 2020. All of her paperwork was electronically signed with the following signature:

The arbitration agreement, attached to Lazar's declaration, generally provided that "any disputes regarding employment with or termination of employment from" Interior Specialists would be submitted to binding arbitration. The agreement limited the parties to pursuing claims "only in their individual capacities" and, conversely, required them to waive their rights "to submit, initiate, or participate in a representative capacity, or as a plaintiff, claimant or member of a class action, collective action or other representative or joint action, regardless of whether the action is filed in arbitration or in court." Regarding PAGA claims specifically, the agreement stated in relevant part:

> "Except to the extent this provision is unenforceable as a matter of law, the parties agree that each may bring and pursue claims against the other only in their individual capacities, and may not bring, pursue, or act as a plaintiff in any purported representative or private attorney general proceeding other than on an individual basis. . . . The parties expressly agree that any representative claims that are found not subject to arbitration under this agreement shall be resolved in court and shall be stayed pending the outcome of the arbitration." (Capitalization omitted.)

4

The agreement also included a severability clause, stating that any term or provision deemed invalid, illegal, or unenforceable would "be limited to the narrowest extent possible and severed from" the agreement, while the rest of the agreement would "remain in effect and be enforceable."

Huff opposed the motion to compel arbitration, primarily arguing that the arbitration agreement was invalid because her "own signature appear[ed] nowhere on the" document "but rather [was] signed by someone else apparently named 'William' . . . ." Huff explained that when she opened the agreement in DocuSign, it was "non-interactive"—meaning she was not able to click anywhere or enter any information into the document—and it was already signed by "William." To corroborate this point, Huff referenced an e-mail she sent to Lazar on December 1, 2020:

> "Good morning Brittany. Did you get my I-9? Also, all of the forms I have received from you (Docu-Sign), has someone else's name inserted when I click on the 'sign' button. Could you please check this for me on all documents I have signed in Docu-Sign to see if there are problems with my electronic signatures? Thanks." (Capitalization omitted.)

Huff received no response to her e-mail.

On May 27, 2022, the trial court granted the motion to compel arbitration. As to the validity of the agreement, the court found sufficient evidence establishing that Huff consented to arbitration. It specifically determined that the agreement must have been interactive since it contained accurate personal information about Huff that only she could have known. Moreover, she admitted in her e-mail that she "click[ed] on the 'sign' button" which is all someone can do when signing electronically. In the court's view, the fact that Huff "did everything [she] could to sign" the agreement evidenced her intent to sign. "[T]hat there was some kind of computer glitch

5

that generated someone else's name does not take away the fact that she clicked the sign button."

In the meantime, Interior Specialists filed a separate motion to compel arbitration of Huff's PAGA claims.[3] Huff opposed the motion, reiterating that the arbitration agreement was invalid because she did not sign it. Based on *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*), she further contended that insofar as the agreement required her to waive her PAGA action, it was unenforceable as a matter of public policy.

In the event the court found the agreement enforceable as to her individual PAGA claims, she urged the court *not* to dismiss her nonindividual claims. Huff directed the court's attention to *Adolph*, *supra*, 14 Cal.5th 1104—which was then pending review on the issue of standing to pursue nonindividual claims once individual claims are ordered to arbitration—as well as language in the agreement stating "that any representative claims

---

[3] Over Huff's objection, we grant Interior Specialists' motion to augment the record with the: (1) Notice of Motion and Memorandum of Points and Authorities in Support of the Motion to Compel Arbitration; (2) Declaration of Ryan H. Crosner in Support of Defendants' Motion to Compel Arbitration and supporting exhibits; (3) Declaration of Brittany Lazar in Support of Defendants' Motion to Compel Arbitration and supporting exhibits; and (4) Proposed Order Granting Defendants' Motion to Compel Arbitration. Although it appears that Huff included the motion to compel in her notice designating the record, these documents were not included in the clerk's transcript. (See Cal. Rules of Court, rules 8.122 & 8.155(a)(1)(A); further rule references are to the California Rules of Court.) We deny Interior Specialists' motion as to the "Opposition to Plaintiff's Motion for Reconsideration of Order Granting Motion to Compel Arbitration" as that item is already included in the appellate record.

We deny Interior Specialists' request for judicial notice. The documents filed in other cases—one declaration and two minute orders—are improper and unnecessary to our resolution of this appeal. The register of actions is already included in the record.

that are found not subject to arbitration under this agreement shall be resolved in court and shall be stayed pending the outcome of the arbitration." (Capitalization omitted.)

Relying on *Viking River*, *supra*, 596 U.S. 639—decided shortly after the motion to compel arbitration of the PAGA claims was filed—Interior Specialists maintained that the arbitration agreement was valid to the extent it required Huff to submit her individual claims to arbitration, and that her nonindividual claims should be dismissed for lack of standing. It also argued there was no basis to relitigate the signature issue.

The court agreed with Interior Specialists. On October 21, 2022, it ordered Huff's individual PAGA claims to arbitration, dismissed her nonindividual claims without prejudice for lack of standing, and otherwise stayed the action pending completion of arbitration. The court considered *Viking River* "dispositive" of those issues. As to the validity of the agreement, the court explained that issue was already litigated and decided, expressly incorporating by reference its May 27, 2022 order.

Huff filed a petition for writ of mandate in this court, arguing that the trial court erred in dismissing rather than staying the nonindividual PAGA claims and in finding that she signed the arbitration agreement. We summarily denied the writ petition on January 18, 2023 with the following order:

> "The petition for writ of mandate and informal response have been read and considered by Justices Irion, Do, and Buchanan. The petition is denied. (See, e.g., *Mauro B. v. Superior Court* (1991) 230 Cal.App.3d 949, 952–953 ['It is well settled that a party is not entitled to obtain review of an appealable judgment or order by means of a petition for an extraordinary writ where he or she failed to timely file an appeal from the ruling.'].)"

7

Huff then moved for reconsideration in the trial court in light of published appellate decisions filed after the October 21, 2022 order (but before the Supreme Court decided *Adolph*). In particular, she relied on *Galarsa v. Dolgen California, LLC* (2023) 88 Cal.App.5th 639 and *Piplack v. In-N-Out Burgers* (2023) 88 Cal.App.5th 1281, which both held that plaintiffs retain standing to pursue nonindividual PAGA claims even if their individual claims are ordered to arbitration, notwithstanding the contrary suggestion in *Viking River*. (See *Galarsa*, at p. 644; *Piplack*, at p. 1285.)

Interior Specialists opposed, principally contending that the trial court lacked jurisdiction to reconsider its order because the time to appeal—which Interior Specialists posited was 60 days from October 26, 2022, when the superior court clerk mailed the minute order of the October 21 decision—had passed, rendering the order final. On the merits, Interior Specialists maintained that *Viking River* controlled. Huff asserted in response that the time to appeal had not passed. In her view, she had 180 days from the October 21, 2022 order—until April 19, 2023—to file a notice of appeal. The 60-day time limit did not apply because she was not served with a Notice of Entry and the minute order mailed by the clerk was not filed-endorsed as required by rule 8.104(a)(1).

Reconsideration was denied on April 14, 2023. With the benefit of published appellate decisions addressing standing to pursue nonindividual PAGA claims post-*Viking River*, the trial court appropriately recognized that it wrongly dismissed Huff's nonindividual claims. It explained that but for this court's summary denial of the writ petition, it would have granted reconsideration. However, the trial court interpreted our summary denial order to mean: "(1) Huff should have filed an appeal since the court's order of October 21, 2022, dismissing the non-individual representative PAGA claims,

8

constitutes an appealable order, and (2) it is now too late for Huff to file such an appeal."[4]  Believing its hands were tied, the court concluded that its October order was final and it therefore lacked jurisdiction to correct its error.

On April 18, 2023, Huff filed two notices of appeal—one from the May 27, 2022 order finding the arbitration agreement enforceable, compelling arbitration of her claims, and staying the class action, and another from the October 21, 2022 order.  Before briefing began, we asked Huff to file a letter addressing the appealability of these orders.  She filed a response, which we deferred to be considered with the appeal itself.

## DISCUSSION

On appeal, Huff reasserts her two main arguments:  (1) the arbitration agreement is invalid because she did not sign it, and (2) the trial court erred in dismissing her nonindividual PAGA claims.  Addressing the second issue first, we conclude that Huff timely appealed the order dismissing her nonindividual claims under the death knell doctrine and, on the merits, we must reverse in light of *Adolph*, *supra*, 14 Cal.5th 1104.  Since the signature issue would merely provide an alternative ground for reversing the dismissal order, we decline to reach Huff's arguments on that point.

---

[4]     Huff pointed out that she had no opportunity to file a reply in the writ proceeding.  As a result, she was never able to explain why the 180-day rather than 60-day deadline applied based on the lack of service of a Notice of Entry or filed-endorsed order.  Although the court acknowledged that Huff was never served with any such document, it speculated that our court might have found "substantial compliance" with rule 8.104(a)(1) because the October minute order was signed by a judge, dated, and served on the parties by the court clerk.

9

**A.** *October 21, 2022 Order Dismissing Nonindividual PAGA Claims*

    1.    *Timeliness of the Appeal*

The parties agree that the order dismissing the nonindividual PAGA claims is appealable under the death knell doctrine. (See generally *Allen v. San Diego Convention Center Corp., Inc.* (2022) 86 Cal.App.5th 589, 596 ["An order dismissing a representative PAGA claim is immediately appealable to the extent it effectively rings the 'death knell' of that claim"].) They disagree, however, on whether the appeal was timely. Their dispute focuses on whether the 180-day or 60-day deadline applies and, more precisely, whether the trial court's October 21, 2022 minute order was "filed-endorsed" within the meaning of rule 8.104(a)(1).

Rule 8.104(a) provides as follows: "Unless a statute or rules 8.108, 8.702, or 8.712 provide otherwise, a notice of appeal must be filed on or before the earliest of: [¶] (A) 60 days after the superior court clerk serves on the party filing the notice of appeal a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment, showing the date either was served; [¶] (B) 60 days after the party filing the notice of appeal serves or is served by a party with a document entitled "Notice of Entry" of judgment or a filed-endorsed copy of the judgment, accompanied by proof of service; or [¶] (C) 180 days after entry of judgment." The term "judgment" for purposes of rule 8.104(a) includes an appealable order. (Rule 8.104(e).)

" 'The time of appealability, having jurisdictional consequences, should above all be clear.' '[B]right lines are essential in this area, to avoid both inadvertent forfeiture of the right to appeal and excessive protective appeals by parties afraid they might suffer such a forfeiture.' ' "Neither parties nor appellate courts should be required to speculate about jurisdictional time limits." ' " (*Meinhardt v. City of Sunnyvale* (2024) 16 Cal.5th 643, 649–650,

10

citations omitted.) These principles have "led courts interpreting rule 8.104(a)(1) and its predecessors to hold that documents mailed by the clerk do not trigger the 60–day period for filing a notice of appeal unless the documents *strictly comply* with the rule." (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 902 (*Alan*), italics added.) Accordingly, to trigger the 60-day deadline, "the required 'document entitled "Notice of Entry" ' must bear precisely that title" and "the 'file-stamped copy of the judgment' must truly be file stamped." (*Alan,* at p. 903, citations omitted.)

Here, it is undisputed that no document entitled "Notice of Entry" was ever served in this case. The only issue is whether the October 21, 2022 minute order, mailed to Huff by the superior court clerk, was "filed-endorsed." We agree with Huff that it was not.

As explained in rule 2.259(d)(1),[5] "[t]he court's endorsement of a document electronically filed must contain the following: 'Electronically filed by Superior Court of California, County of _____, on _____ (date)," followed by the name of the court clerk." An electronic filed-endorsement "has the same force and effect as a manually affixed endorsement stamp with the signature and initials of the court clerk." (*Id*., subd. (d)(2).) "[M]inute orders are virtually never file stamped" (*In re Marriage of Taschen* (2005) 134 Cal.App.4th 681, 686) and the minute order in this case is no exception. The order simply does not bear an endorsement such as either of these, featured on other documents in the appellate record:

---

5      We appreciate that by its literal terms, rule 2.259 concerns actions taken by the court "on receipt of [an] electronic filing," indicating that it applies to documents filed by the parties. We are, however, unaware of any separate rule describing a different endorsement that applies to documents filed by the court itself or any reason why a different definition of "filed-endorsed" should apply.



FOR COURT USE ONLY

FILED
Clerk of the Superior Court

MAY 27 2022

By:

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
04/18/2022 at 05:47:00 PM
Clerk of the Superior Court
By _____ ,Deputy Clerk

Resisting this conclusion, Interior Specialists contends that we have "already determined that [Huff's] appeal is untimely" (capitalization omitted), referencing our order summarily denying the writ petition. But it is well established that "[a] summary denial of a writ petition does not establish law of the case whether or not that denial is intended to be on the merits or is based on some other reason." (*Kowis v. Howard* (1992) 3 Cal.4th 888, 899.) This is true even if the summary denial order includes a brief explanatory statement or citation. (*Id.* at p. 895.) The earlier summary denial does not preclude us from considering timeliness anew.[6] (See *Kowis,* at p. 895.)

Interior Specialists also emphasizes that the minute order was signed by the trial judge. A judge's signature may be relevant in assessing the finality of an order. (See, e.g., *People v. One Parcel of Land* (1991) 235 Cal.App.3d 579, 582, fn. 2 [service of an order that "did not bear the judge's signature or signature stamp . . . did not give notice that a *completed* order had been entered" and therefore "did not commence the [60-day] appeal deadline"].)[7] But it is not tantamount to a filed-endorsement. Although the

---

[6] This is particularly true in this case, where Huff never had the opportunity to respond to Interior Specialists' timeliness argument. (See a*nte,* at fn. 4.)

[7] The *One Parcel* court was construing former rule 2, which was renumbered as rule 8.104 effective January 1, 2007. (*Alan, supra,* 40 Cal.4th at p. 897, fn. 1.) The version of rule 2(a) in effect at the time *One Parcel* was decided is substantially similar to the current version of rule 8.104(a).

12

trial court in this case expressly contemplated at the reconsideration hearing whether its signature on the minute order would constitute "substantial" compliance with rule 8.104(a), the law requires strict compliance in this context.

Relatedly, Interior Specialists points out that in 2016 the Judicial Council amended rule 8.104(a) to change "filed-stamped" to "filed-endorsed." Referencing the dictionary, Interior Specialists translates "endorsed" to "signed" and thus understands the amendment to mean the 60-day deadline now applies when an order is filed and signed by the judge.

To the contrary, the 2016 amendment to rule 8.104(a) was part of "the Rules Modernization Project," which was "a collaborative effort to comprehensively review and modernize the California Rules of Court so that they will be consistent with and foster modern e-business practices," including electronic filing and service. (Judicial Council of Cal., Information Technology Advisory Com., Technology: Modernization of the Rules of Court to Facilitate E-Business, E-Filing, and E-Service (2015) pp. 2–3, 48.) Replacing "stamped" with "endorsed" was a "technical" change made throughout the rules (*id*. at pp. 3) to account for the fact that electronic documents should not require a physical stamp (see *ibid*.). "Endorsed" is a broader term that can be used with respect to both paper and electronic documents. (See *id*. at p. 99.) This is consistent with rule 2.259(d), described above—as well as rule 8.77(e) (applicable to the appellate courts)—which equate the "endorsement of a document electronically filed" with "a manually affixed endorsement stamp . . . ." (Rule 8.77(e).) The 2016 amendment merely modernized the filed-stamp requirement; it did not eliminate it altogether.

13

Finally, Interior Specialists' reliance on *Filipescu v. California Housing Finance Agency* (1995) 41 Cal.App.4th 738 is misplaced. Although the appellate court used the phrase "file-stamped signature" once in its opinion (*id.* at p. 740), the entire opinion makes clear that the appealed-from order in that case was *both* filed-stamped *and* signed by the judge.

In sum, because the minute order did not strictly comply with rule 8.104(a)(1), the 60-day deadline was never triggered. Huff therefore had 180 days from the October 21, 2022 order—until April 19, 2023—to notice her appeal. Because she filed her notice of appeal on April 18, it was timely.

2. *Standing to Pursue Nonindividual Claims*

Turning to the merits, Huff contends that even before the Supreme Court's decision in *Adolph*, *supra*, 14 Cal.5th 1104, the trial court realized that it likely erred in dismissing her nonindividual claims. And now that *Adolph* has been decided, the law is settled that a plaintiff does not lose standing to pursue nonindividual PAGA claims just because her individual claims are ordered to arbitration. We agree with Huff.

Between *Iskanian*, *Viking River*, and *Adolph*, the arbitrability of PAGA claims has been shaped and reshaped over the last decade. *Iskanian* first held "that an employee's right to bring a PAGA action is unwaivable." (*Iskanian*, *supra*, 59 Cal.4th at p. 383.) Since the PAGA was designed to "augment" the LWDA's enforcement capability "by empowering employees to enforce the Labor Code as representatives of the [a]gency," waivers of the right to bring a PAGA action would effectively limit employers' responsibility for Labor Code violations. (*Ibid.*) Such waivers were therefore "contrary to public policy and unenforceable as a matter of state law." (*Id.* at p. 384.)

14

The *Iskanian* court rejected the employer's argument that the arbitration agreement in that particular case should be enforced because it only required waiver of nonindividual claims. (*Iskanian*, *supra*, 59 Cal.4th at pp. 383–384.) Without deciding whether "an individual claim is permissible under the PAGA," the court opined that "a prohibition of *representative* claims frustrates the PAGA's objectives" insofar as " 'a single-claimant arbitration under the PAGA for individual penalties [would] not result in the penalties contemplated under the PAGA to punish and deter employer practices that violate the rights of numerous employees under the Labor Code." (*Id.* at p. 384.) Appellate courts subsequently "interpreted this aspect of *Iskanian* 'as prohibiting splitting PAGA claims into individual and nonindividual components to permit arbitration of the individual claims.' " (*Nickson v. Shemran, Inc.* (2023) 90 Cal.App.5th 121, 128 (*Nickson*).)

The United States Supreme Court in *Viking River* left intact the portion of *Iskanian* deeming wholesale waivers of the right to bring PAGA claims invalid as a matter of California public policy. (*Viking River*, *supra*, 596 U.S. at p. 662.) But to the extent *Iskanian* suggested that PAGA claims could not be split into individual and nonindividual claims, the high court held the Federal Arbitration Act preempted that rule. (*Viking River*, at p. 662.) The arbitration agreement in that case "purported to waive 'representative' PAGA claims" but also included a severability clause "provid[ing] that if the waiver provision is invalid in some respect, any 'portion' of the waiver that remains valid must still be 'enforced in arbitration.' " (*Ibid.*) The court interpreted this to mean the employer "was entitled to enforce the agreement insofar as it mandated arbitration of [the employee's] individual PAGA claim." (*Ibid.*)

With respect to the nonindividual claims, *Viking River* opined—in a portion of the decision that has since been characterized as "dicta" (*Nickson*, *supra*, 90 Cal.App.5th at p. 133)—that "PAGA provide[d] no mechanism to enable a court to adjudicate non-individual PAGA claims once an individual claim has been committed to" arbitration. (*Viking River*, *supra*, 596 U.S. at p. 663.) "Under PAGA's standing requirement," as understood by *Viking River*, "a plaintiff can maintain non-individual PAGA claims in an action only by virtue of also maintaining an individual claim in that action." (*Ibid.*) "When an employee's own dispute is pared away from a PAGA action, the employee is no different from a member of the general public, and PAGA does not allow such persons to maintain suit." (*Ibid.*) The correct course of action, *Viking River* suggested, was to dismiss the nonindividual claims. (*Ibid.*)

In the wake of *Viking River*, the California Supreme Court—the final arbiter of California law—rejected this suggestion in *Adolph*, *supra*, 14 Cal.5th 1104. *Adolph* reaffirmed that to have standing under PAGA, "a plaintiff must be an 'aggrieved employee'—that is, (1) 'someone "who was employed by the alleged violator" ' and (2) ' "against whom one or more of the alleged violations was committed." ' " (*Id.* at p. 1114, quoting *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 83, 84.) "Where a plaintiff has brought a PAGA action comprising individual and non-individual claims, an order compelling arbitration of the individual claims does not strip the plaintiff of standing as an aggrieved employee to litigate claims on behalf of other employees under PAGA." (*Adolph*, at p. 1114.)

Here, the trial court ruled on Interior Specialists' motion to compel arbitration of Huff's PAGA claims four months after *Viking River* (before *Adolph* and the chorus of published appellate cases clarifying the standing

16

issue). Relying solely on *Viking River*, the trial court determined that upon ordering Huff's individual PAGA claims to arbitration, Huff no longer had standing to pursue her nonindividual claims, and therefore dismissed them without prejudice. In light of *Adolph* and other appellate court decisions, it is now clear that the trial court was mistaken on this point. Indeed, the court recognized its error at the reconsideration hearing, and only declined to take corrective action because it believed it was bound by our summary denial order, which we have explained was not the case. We will reverse the October 21, 2022 order and remand with directions for the trial court to stay Huff's nonindividual claims pending completion of arbitration. (See, e.g., *Gregg v. Uber Technologies, Inc.* (2023) 89 Cal.App.5th 786, 806.)

**B.** *May 27, 2022 Order Compelling Arbitration*

Huff also attempts to appeal from the May 27, 2022 order compelling arbitration of the claims alleged in her class action. She specifically seeks review of the court's finding that she signed the arbitration agreement, which she understandably views as a necessary predicate for the court's decision to compel arbitration of her various individual claims in both the class and PAGA actions. For reasons we explain, even if the factual findings underlying the orders compelling arbitration are reviewable on appeal from the order dismissing Huff's nonindividual PAGA claims, we decline to reach the question regarding the validity of her electronic signature.

The law is clear that "[a]n order granting a petition to compel arbitration is not appealable, but is reviewable on appeal from a subsequent judgment on the award." (*Ashburn v. AIG Financial Advisors, Inc.* (2015) 234 Cal.App.4th 79, 94 (*Ashburn*).) Huff does not suggest that the May 27, 2022 order is an independently appealable order. Instead, she invokes Code of

17

Civil Procedure[8] section 906, which states in relevant part: "Upon an appeal pursuant to Section 904.1 or 904.2, the reviewing court may review . . . any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party . . . ."

But the law is less than clear as to whether an appeal from an order dismissing class or representative claims pursuant to the death knell doctrine can encompass an earlier or concurrent order compelling arbitration of individual claims. (See, e.g., *Nixon v. AmeriHome Mortgage Company, LLC* (2021) 67 Cal.App.5th 934, 943 (*Nixon*) ["It is far from certain whether the judicially created death knell exception to the one final judgment rule for an order dismissing class claims extends to make appealable an otherwise nonappealable order compelling arbitration when the two orders are issued simultaneously"]; *Cortez v. Doty Bros. Equipment Co.* (2017) 15 Cal.App.5th 1, 10 (*Cortez*) ["[E]ven if appellate jurisdiction exists under the death knell doctrine, is [an earlier] order compelling arbitration subject to review?"].)

We perceive arguments on both sides of the threshold issue whether an appeal under the death knell doctrine constitutes "an appeal pursuant to Section 904.1 or 904.2" as required by section 906. (See, e.g., *Nixon, supra,* 67 Cal.App.5th at p. 944 [because section 906 "authorizes review of an interim nonappealable order '[u]pon an appeal pursuant to Section 904.1 or 904.2'—that is, an appeal from a final judgment, postjudgment orders and certain specific, defined interlocutory orders" it is "an imperfect basis for jurisdiction in an appeal" under the death knell doctrine]; *Cortez, supra,* 15 Cal.App.5th at p. 10 ["[I]s section 906 inapplicable . . . when the appeal from the termination of the class claims was premised not on Code of Civil

_____

[8] Further statutory references are to the Code of Civil Procedure.

18

Procedure sections 904.1 or 904.2, as section 906 by its terms requires, but pursuant to the judicially created death knell doctrine?"]; but see *Miranda, supra,* 241 Cal.App.4th at p. 200 ["[a]ppealability under the death knell doctrine requires 'an order that . . . *amounts to a de facto final judgment* for absent plaintiffs" (italics added)].)  Huff offers no analysis on this point.

As to whether the May 27, 2022 order is an "intermediate" order "which involves the merits or necessarily affects" the October 21, 2022 order dismissing the nonindividual PAGA claims or "substantially affects the rights of a party" (§ 906), Huff asserts that the orders "clearly *involve the same issues* and *necessarily affect each other*, as they clearly relate to the same purported arbitration agreement and the same purported parties thereto." (Italics added.)  But it cannot be enough that the orders concern the same agreement and parties.  If that were true, then Huff could "bring into the appeal all sorts of collateral or other unrelated intermediate decisions that do not affect . . . the appealed decision, thereby potentially increasing exponentially the issues to be addressed on appeal and the use of limited judicial resources to decide those issues."  (*Cahill, supra,* 194 Cal.App.4th at p. 948.)  We previously expressed our concern that the Legislature intended no such broad and sweeping rule.  (See *ibid.*)  Rather, only intermediate rulings "directly related to [ ] the judgment or order being appealed" are subject to review under section 906.  (*Cahill,* at p. 948.)

Huff also highlights that "the trial court itself explicitly stated in its October 21 ruling that it would simply adopt and incorporate its own prior decisions with respect to 'the validity of the arbitration agreement' rather than independently reconsidering the issue."  We appreciate that both the May and October orders compelling arbitration of Huff's individual claims are based on the factual finding that she signed the arbitration agreement.

19

Huff fails to expl ain, however, the relationship between this subsidiary finding and the October order dismissing her nonindividual claims, which is the only order that gives rise to our appellate jurisdiction. Nor does she analyze how this relationship, if any, satisfies the criteria of section 906. Perhaps such an argument is conceivable (see, e.g., *Nixon, supra*, 67 Cal.App.5th at p. 943 & fn. 3), but Huff does not develop it here.

She principally relies on a footnote from this court's decision in *Wallace v. GEICO General Ins. Co.* (2010) 183 Cal.App.4th 1390 (*Wallace*), which we find distinguishable. In that case, plaintiff Wallace filed a proposed class action against GEICO essentially claiming that GEICO wrongly refused to pay the full estimated costs for vehicle repairs. (*Wallace, supra*, 183 Cal.App.4th at pp. 1392–1393.) GEICO moved for summary judgment, arguing that Wallace lost standing to pursue her class claims because it sent her a check to cover the amount that she paid out of pocket for repairs, thus remedying her injuries. (*Id.* at p. 1395.) The trial court agreed and granted the motion. (*Ibid.*) When Wallace failed to find a substitute class representative, GEICO successfully moved to strike the class allegations from the complaint. (*Id.* at pp. 1395–1396.)

On appeal from the order striking the class allegations, Wallace's sole argument was that the trial court erred in finding that she lost standing to proceed as the representative plaintiff when GEICO sent her the check. (*Wallace, supra*, 183 Cal.App.4th at pp. 1396–1397.) Before addressing the merits of that contention, we observed in a footnote that an order striking class allegations was immediately appealable under the death knell doctrine. (*Id.* at p. 1396, fn. 5.) We also noted that we can "review 'any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the . . . order appealed from.' " (*Wallace*, at p. 1396, fn. 5.) From these

20

precepts, we decided that "the ruling that Wallace lacks standing to serve as a class representative [was] within the scope of our review, as that ruling impacted the trial court's decision to strike the class allegations." (*Ibid*.)

In *Wallace*, the appealable order striking the class allegations solely and directly depended on the propriety of the earlier ruling that Wallace lost standing to act as the class representative. (*Wallace*, *supra*, 183 Cal.App.4th at p. 1398 ["We now turn to the issue of whether, as a *predicate* to its order striking the class allegations, the trial court erred in ruling that due to GEICO's offer to compensate her for her injury, Wallace lost her standing to act as a representative plaintiff" (italics added)].) In this case, the appealable order dismissing the nonindividual claims immediately depends on whether the trial court correctly relied on *Viking River* in ruling that Huff lost standing to pursue those claims merely because her individual claims were ordered to arbitration. The finding that Huff validly signed the agreement is several layers removed from that decision. Huff cites no authority supporting the idea that section 906 can reach this far back.

It is thus unclear whether, in an appeal under the death knell doctrine, section 906 operates to encompass an earlier or concurrent order compelling arbitration. But we have no need to resolve that question in this case. The only appealable order here dismissed Huff's nonindividual PAGA claims. We are resolving the appeal in Huff's favor by concluding that the trial court committed reversible error in making that order. Even if we had the jurisdiction to do so, we would find it unnecessary to address Huff's alternative argument suggesting a different analytical path to, perhaps, the same conclusion.

21

Accordingly, we do not reach the merits of the electronic signature issue.  Huff may seek review of the order compelling arbitration on appeal from a judgment on the award.  (*Ashburn, supra,* 234 Cal.App.4th at p. 94.)

## DISPOSITION

The October 21, 2022 order dismissing Huff's nonindividual PAGA claims is reversed.  The case is remanded to the trial court with directions to stay the nonindividual claims pending the completion of arbitration.  Huff shall recover her costs on appeal.

DATO, Acting P. J.

WE CONCUR:

DO, J.

RUBIN, J.